UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARY A. COOKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:06CV52MLM |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Jo Anne B. Barnhart ("Defendant") denying the application filed by Mary A. Cookson ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§1381 et seq. Plaintiff has filed a brief in support of her Complaint. Doc. 14. Defendant has filed a brief in support of the Answer. Doc. 15. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). Doc. 8.

**I.
PROCEDURAL HISTORY**

Plaintiff filed an application for SSI, which application was denied. (Tr. 49-53). Following an adverse decision Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[1] The ALJ issued a decision dated May 13, 2005, denying Plaintiff's application. (Tr. 12-27). Plaintiff filed

---

[1] Alabama, where Plaintiff originally filed her application, is one of several test states participating in modifications to the disability determination procedures which apply in this case. See 20 C.F.R. § § 404.906 and 404.966 (2002). These modifications include, among other things, the elimination of the reconsideration step and at times, the elimination of the Appeals Council review step in the administrative appeals process. See id. Therefore, Plaintiff's appeal in this case proceeded directly from her initial denial of benefits to the administrative law judge level.

a request for review with the Appeals Council and the Appeals Council denied Plaintiff's request. (Tr. 4-6). As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## MEDICAL RECORDS

Records from the Woodland Medical Center, dated June 24, 2003, reflect that Plaintiff presented complaining of a head injury and that the diagnosis on this date was head trauma. A CT scan report of this date states that there was no evidence of mass, hemorrhage, edema, extra-axial fluid collection, hydrocephalus, or abnormal parenchymal calcification; that Plaintiff's brain volume was normal; that the CT scan of Plaintiff's head was unremarkable; and that if her symptoms persisted an MRI of the brain might be warranted. (Tr. 100-101).

Medical records dated July 9, 2003, state that Plaintiff fell backwards on June 24, 2003; that she struck her head on an electrical box; that her complaints included dizziness; and that she reported that she had no desire to stop alcohol or tobacco use. (Tr. 106-107).

Records from North Alabama Medical Associates reflect that Plaintiff was seen on July 14, 2003; that she was an alcoholic; and that she was advised to reduce her alcohol intake with the goal of quitting. (Tr. 105).

Records from North Alabama Medical Associates reflect that on July 16, 2003, the importance of quitting alcohol use was stressed to Plaintiff and that her response was that alcohol use was her only enjoyment. (Tr. 105).

Records of North Central Neurology Associates state that Plaintiff was seen on October 8, 2003. Notes of this date state that physical exam showed that Plaintiff was well-developed and in no apparent distress; that her lungs were clear to auscultation; that her peripheral pulses were normal; that she was alert and oriented x 3; that her motor strength was normal in all four extremities; that

her gait was normal; that the assessment was seizures; and that it was recommended that she discontinue alcohol use. (Tr. 129-30).

A radiology report prepared by Gerald Karcher, M.D., dated October 16, 2003, states that Plaintiff had an MRI of the brain; that the brain architecture was normal; that no migrational abnormality was appreciated; that the hippocampi appeared normal; that there was no mass-effect or midline shift; that no abnormal extraaxial fluid collections were identified; and that an MRI of the brain was normal. (Tr. 131).

Chris LaGanke, M.D., reported that Plaintiff had an EEG on October 22, 2003; that the EEG was normal; and that a sleep deprivation study was recommended. (Tr. 133).

J.L. Zaremba, M.D., examined Plaintiff on December 3, 2003. Dr. Zaremba's records reflect that Plaintiff reported that she had partial complex type seizures; that there was a "question of uterine adhesions"; that Plaintiff smoked one and a half packs of cigarettes a day for thirty years; that since she was thirteen Plaintiff drank "perhaps 12-18 beers a day"; that Plaintiff described visual blurring and dysfunction particularly with reading; that she had a cough and early morning shortness of breath; that she had chronic low back pain and had difficulty lifting more than five to ten pounds; that bending caused her difficulty; and that she had "frequent, recurrent, absence type spells, possible partial complex seizures." Dr. Zaremba reported that Plaintiff was in no acute distress; that she had bilateral rhonchi and end expiratory wheezing; that her "ROM appear[ed] to be full, but she complained of pain particularly in the knees and legs"; that she had mild spasm in her back; that her gait was slow but without assisting device; that her station was normal; and that she was unable to squat and heel/toe walk. Dr. Zaremba further reported that a neurological exam showed that "motor" was "grossly intact"; that sensory was "intact"; that reflexes were "hyperactive but equal"; that grip was 5/5 and intact; that she could "extend both legs to 0 degrees without lower pain"; that there was

3

no atrophy; and that her manipulation was normal. Dr. Zaremba reported that Plaintiff had partial complex seizures diagnosed by neurological evaluation and EEG findings with an MRI scan; that Plaintiff was on anti-seizure medication; that she still had seizures; that she had chronic alcohol abuse and was reluctant to stop; that she had chronic obstructive pulmonary disease and chronic bronchitis; that she had abnormal liver function tests most likely secondary to alcohol induced hepatitis cirrhosis; that she had chronic low back pain; that she had abdominal pain; and that she had bi-lateral foot pain. (Tr. 111-12).

A report form Neal Templeton, M.D., dated December 3, 2003, states that a lumbar spine exam showed that Plaintiff had degenerative changes at L4-5 and L5-S1 and that the vertebral bodies were well-maintained. (Tr. 113).

R.D. Carter, M.D., conducted a Residual Functional Capacity Assessment of Plaintiff on December 16, 2003. Dr. Carter reported that Plaintiff had no exertional limitations; that her only postural limitation was that she could never climb; that she had no manipulative, communicative, or visual limitations; that she should avoid concentrated exposure to extreme heat; and that she should avoid all exposure to hazards such as machinery, heights, large bodies of water and professional driving. Dr. Carter reported that it was difficult to determine the etiology of Plaintiff's seizures; that Plaintiff was non-compliant with prescribed therapy; and that she could not "be given full credibility because the severity of her symptoms cannot be fully assessed." (Tr. 119-23).

Records of North Central Neurology Associates state that Plaintiff was seen on January 14, 2004; that Plaintiff presented for seizures; that she had one seizure in the prior three months; that Plaintiff reported that she was sporadic in taking her medications because she could not afford them; that Plaintiff reported that she reduced her alcohol intake from a case of beer a day to a case of beer

4

a week; that Plaintiff was diagnosed with complex partial seizures and alcoholism; and that she was "strongly encouraged to stop drinking alcohol." (Tr. 127-28).

Dr. LaGanke, of North Central Neurology Associates, reported that Plaintiff was seen on July 1, 2004, and that physical examination showed Plaintiff was in no apparent distress; that her lungs were clear to auscultation; that she was alert and oriented x 3; that her strength/bulk was normal in all four extremities; and that she had no abnormal movements; and that her gait was normal. Dr. LaGanke reported that Plaintiff had complex, partial seizures which were independent of alcohol intake; that "the absence of abnormality on MRI and EEG certainly does not speak against the fact that she has seizures"; and that it was recommended that Plaintiff increase Depakote and consider a twenty-four hour ambulatory EEG if she persisted with seizures. (Tr. 126).

## III.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical

5

equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger, 390 F.3d at 590-91; Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § § 404.1520(f). Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

7

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health and Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health and Human Servs., 902 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health and Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-7 (8th Cir. 1982) (en

9

banc). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Rautio, 862 F.2d at 180; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

## IV.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. Krogmeier, 294 F.3d at 1022.

Plaintiff contends that the ALJ applied an incorrect standard when assessing Plaintiff's allegation of pain; that direct medical evidence is not required to support claims of pain; that the ALJ failed to give proper weight to Plaintiff's subjective complaints of pain; that the ALJ failed to address the combination of Plaintiff's impairments; and that the ALJ failed to recognize the dangerousness of Plaintiff's engaging in work activities when she is "subject to seizures at any moment."

The ALJ acknowledged that Plaintiff has a seizure disorder and that her seizures may last a minute or two. The ALJ further considered that there is conflicting evidence and testimony. In particular, the ALJ considered that the record is inconsistent in regard to frequency and length of Plaintiff's seizures, in regard to the extent of Plaintiff's history of alcohol consumption, and in regard to the effect, if any, of Plaintiff's alcohol consumption upon her seizures.

Indeed, Plaintiff testified that in the six months prior to the hearing she reduced her alcohol intake and that during this period she had three to four drinks occasionally. (Tr. 145). Plaintiff's mother, Mary Durall, testified that Plaintiff had "cut down a lot" in the six to eight months prior to the hearing. (Tr. 163). As noted by the ALJ, Plaintiff said in the emergency room that she drank six to twelve beers a day but she told Dr. Zaremba that she drank twelve to eighteen beers daily and in January 2004 she told Dr. LaGanke that she was drinking a case of beer a week. (Tr. 21).

In regard to the cause of Plaintiff's seizures, Plaintiff testified that Dr. LaGanke told her that alcohol could be causing her seizures (Tr. 146); Dr. Carter reported that it was difficult to determine the etiology of Plaintiff's seizures; in January 2004 Plaintiff reported to Dr. LaGanke that she had only one seizure in the prior three months after reducing her alcohol intake to a case of beer a week; in July 2004, Plaintiff reported to Dr. LaGanke that she had a seizure daily at four in the morning despite having "quit" her alcohol intake; and Dr. LaGanke reported in July 2004 that Plaintiff's seizures were independent of alcohol. In regard to the length and frequency of Plaintiff's seizures, Plaintiff testified that when she is on medication they last two to three minutes and that she has none to as many as twelve a day (Tr. 150); Plaintiff's husband testified that Plaintiff has four or five seizures a day and that they last from two to twenty minutes (Tr. 161); and Plaintiff's mother testified that Plaintiff's seizures last "a minute, two minutes" and that "a lot of times ... she'll have three and four at a time." (Tr. 165). Also, as noted by the ALJ, that while Plaintiff reported in June 2003 that

11

she had no history of seizures, she told Dr. LaGanke on different dates that she "had seizures since age two, second grade, 18 months, or all her life." (Tr. 20-21).

The ALJ considered that Plaintiff has a decrease in the severity of seizures when she is on medication. The court notes that Plaintiff testified that her seizures are shorter when she takes medication and she reported in January 2004 that she was sporadic in taking her seizure medication. Also, Dr. LaGanke recommended in July 2004 that Plaintiff increase the dosage of her medication and that if her seizures persisted with increased dosage that Plaintiff have a twenty-four hour ambulatory EEG. The record does not reflect that Plaintiff had such a test. Conditions which can be controlled by treatment are not disabling. Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450. The court finds, therefore, that the ALJ properly considered the extent to which Plaintiff's symptoms are decreased with the use of medication.

The ALJ considered that there is no objective medical evidence that Plaintiff's seizure disorder can be expected to produce the level of seizures and related symptoms which would preclude her from working. Significantly, the record reflects that an MRI and an EEG have not disclosed abnormalities which would explain Plaintiff's seizures. Moreover, while medical records reflect that Plaintiff has seizures, these records reflect Plaintiff's self reporting. The record does not reflect that any doctor has observed Plaintiff's seizures. The court finds that the ALJ properly considered that there was an absence of objective medical evidence to support Plaintiff's claim that she is disabled due to a seizure disorder and that his finding in this regard is supported by substantial evidence. See Ramirez v. Barnhart, 292 F.3d 576 (8th Cir. 2002) (holding that while an ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence,

an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence) (citing 20 C.F.R. §§ 416.908, 416.929).

The ALJ considered that it was unlikely that Plaintiff could engage in substantial gainful activity through about the end of June 2004 due to the severity of her alcoholism. He then considered, however, pursuant to the Regulations, that a claimant cannot be found disabled for purposes of Social Security if alcoholism is material to a finding of disability. He further considered that if the claimant would not be disabled if his or her alcoholism were to stop, then the alcoholism is material to a finding of disability. The ALJ considered that in June 2003 Plaintiff's ALT was consistent with alcoholic liver disease and that records of December 2003 indicated that any liver damage "may have been stabilized by the reduction in alcohol intake." (Tr. 22). The ALJ concluded that Plaintiff may be an alcoholic but that her alcoholism "is in remission or under control, and does not interfere with her ability to do substantial gainful activity." (Tr. 25). The AL further considered Plaintiff's alleged physical impairments and their effect on her residual functional capacity ("RFC"). In particular, the ALJ concluded that Plaintiff had no significant limitations from either chronic obstructive pulmonary disease or hypertension and that these impairments are not severe; as stated above, that any liver damage was stabilized with reduction in alcohol intake; and that Plaintiff does not claim severe back pain resulting from her uterus's being fused to her backbone. The ALJ further concluded that Plaintiff's severe impairments include partial complex seizures, degenerative disk disease of the lumbosacral spine, and alcoholism under control by self report.

In regard to Plaintiff's complaint of back pain, the ALJ noted that no physician has indicated an opinion with regard to Plaintiff's limitations and that the medical consultant found no evidence of exertional limitations. The ALJ also considered x-rays addressing Plaintiff's disk disease and that

13

Plaintiff has not alleged severe pain due to disk disease, except when she lifts. The ALJ concluded, therefore, that Plaintiff's pain is no more than moderate with medication. (Tr. 23).

The ALJ concluded that Plaintiff can meet the exertional and nonexertional requirements of light work.[2] The ALJ concluded that although Plaintiff is an alcoholic, it does not interfere with her ability to do substantial gainful activity. He further concluded that because Plaintiff may experience staring spells lasting a minute to two minutes, which spells she describes as seizures, she should not work around heights or hazards or perform driving jobs. The ALJ further concluded that Plaintiff should avoid excessive pulmonary irritants. Despite Plaintiff's allegation to the contrary, the court finds that the ALJ did consider the combination of Plaintiff's impairments. Further, despite Plaintiff's allegation to the contrary, the ALJ did consider the dangerousness of Plaintiff's working in certain capacities when she is subject to seizures.

42 U.S.C. § 423(d)(2)(C) provides that if alcohol is a "'contributing factor material to the Commissioner's determination' of a disability, the claimant is not entitled to benefits." Vester v. Barnhart, 416 F.3d 886, 888 (8th Cir. 2005). See also Brueggeman v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003). The key factor in determining whether a claimant who suffers from alcoholism is disabled is whether the claimant would still be found disabled if the claimant stopped using drugs or alcohol. Id.; Estes v. Barnhart, 275 F.3d 722, 724-25 (8th Cir. 2002) (holding that the ALJ properly denied benefits where there was a clear interrelation between the claimant's alleged disabilities and his alcohol abuse); Rehder v. Barnhart, 205 F.3d 1056, 1059 (8th Cir. 2000); Jackson v. Apfel, 162 F.3d 533, 537 (8th Cir. 1998) (holding that because the plaintiff's depression was linked to chemical

---

[2] The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 416.967(a). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6 (SSA).

14

dependence and because it was not a severe impairment when combined with alcohol abuse, the plaintiff was not disabled). "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow." Brueggeman, 348 F.3d at 693.

Additionally, the Commissioner has promulgated Regulations relevant to the consideration of alcoholism. 20 C.F.R. § 404.1535 (" If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."). Pursuant to the required procedure, an ALJ must engage in a two-step analysis when determining materiality of a claimant's alcohol or drug use. Jackson v. Apfel, 162 F.3d 533, 537 (8th Cir. 1998). The court in Brueggemann, 348 F.3d at 694, explained that an ALJ must first determine if a claimant is disabled "using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." This inquiry "concerns symptoms, not causes." Id. Once an ALJ makes an initial determination that a claimant is disabled, that alcohol use is a concern, and "that substantial evidence on the record shows what limitations would remain in the absence of alcoholism ... , may he then reach a conclusion on whether [a claimant's] substance use disorders are a contributing factor material to the determination of disability. If this process proves indeterminate, an award of benefits must follow." Id. at 695.

In this regulatory framework, the social security claimant bears the burden of proving that his alcohol addiction is not a material factor contributing to his disability. Mittlestedt v. Apfel, 204 F.3d 847, 853 (8th Cir. 2000) (citing Brown v. Apfel, 192 F.3d 492, 498 (8th Cir. 1999)); Estes, 275 F.3d at 725.

15

"It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'" Hudson v. Barnhart, 345 F.3d 661, 667 (8th Cir. 2003) (citing Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir.1995)(internal citations omitted). See also Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir.2000) (holding that it is the ALJ's role to resolve conflicts among medical opinions); 20 C.F.R. § 416.927(d) (2003).

As stated above, the ALJ in the matter under consideration first considered that Plaintiff is an alcoholic and then considered whether Plaintiff is disabled irrespective of the effects of her alcoholism. He further considered whether Plaintiff's alcohol use is a contributing factor material to a determination of her ability to engage in substantial gainful activity. Pursuant to this analysis the ALJ concluded that Plaintiff's alcoholism does not interfere with her ability to engage in substantial gainful activity. As such, the court finds that upon addressing the medical evidence and Plaintiff's subjective complaints, the ALJ properly considered Plaintiff's alcoholism in a manner consistent with the Regulations and that his conclusions in this regard are supported by substantial evidence. See Jackson, 162 F.3d at 537. The court further finds that the ALJ's resolution of conflicts on the record is consistent with the Regulations and that his conclusions in this regard are supported by substantial evidence. See Hudson, 345 F.3d at 667; Cantrell, 231 F.3d at 1107.

Also, upon choosing to discredit Plaintiff's complaints the ALJ considered Plaintiff's daily activities. In particular, the ALJ considered that Plaintiff testified that she sleeps well. He considered that Plaintiff's daily activities include playing with a computer and that this activity requires the ability to sit and to maintain attention and concentration. He further considered that she makes the bed, does dishes, laundry, and bathes and dresses herself and that these activities are consistent with standing, walking, and using the hands. The ALJ also considered that Plaintiff can grocery shop for about thirty minutes; that she attends church; and that she gets along "okay with others." While the

16

undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, a plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir.2005) (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-31 (8th Cir. 1996) (holding that a claimant's daily activities including visiting neighbors, cooking, doing laundry, and attending church were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints. The court further finds that substantial evidence supports the ALJ's decision in this regard.

## V.
## CONCLUSION

For the reasons more fully set forth above, the court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole and should be affirmed.

Accordingly,

17

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Brief in Support of Complaint is **DENIED**; [14]

**IT IS FURTHER ORDERED** that a separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum and Order.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of January, 2007.